UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                                                        Case No. 14-13641 AJC
8th Street LLC                                                                         Chapter 11
Debtor.
_____/

**EMERGENCY Motion Of The Debtor For Entry Of An Order (A) Setting Sale Procedures for Sale Of The Debtor's Assets At 1221-1233 SW 8th St, Miami, FL 33135 (B) Approving The Form And Notice Of Sale; (C) Authorizing The Sale Of Certain Assets Of Debtor Outside The Ordinary Course Of Business, Free And Clear Of All Liens, Claims, Encumbrances And Interests; (D) Scheduling A Hearing To Consider Confirmation of the Plan, and The Sale, and granting an Opportunity to Object; And (E) Determining Employment or Payment of Real Estate Brokers for Successful Bidder, Shortening Time, and Granting Related Relief.**

**HEARING REQUESTED**

**ANY INTERESTED PARTY WHO FAILS TO FILE AND SERVE A WRITTEN OBJECTION TO THIS MOTION PRIOR TO THE HEARING TO BE SET THEREON SHALL BE ARGUED TO HAVE WAIVED OBJECTION.**

The above-captioned debtor and debtor-in-possession (the **"Debtor"**) hereby moves the Court (the **"Motion"**), for entry of an order, pursuant to sections 105(a), and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the **"Bankruptcy Code"**) and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), (a) setting sale procedures with respect to the proposed sale (the **"Sale"**) of certain assets of the Debtor (as discussed in greater detail below, the **"Assets"**); (b) approving the form and manner of notice of sale of the Assets (the **"Sale"**); (c) authorizing the sale free and clear of liens, claims, encumbrances, and interests; (d) scheduling a hearing (the **"Sale Hearing"**) on the Sale and setting objection deadlines with respect to the Sale; and (e) granting related relief. In support of this Motion, the Debtor respectfully states as follows:

## BACKGROUND

1.      On 2/17/14 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code (the "**Case**"). A Plan of Reorganization was filed in this case 7/15/14 Doc 50, which was set for confirmation hearing September 30, 2014 at 2:30 PM Doc 75.

2.      The Debtor has continued in possession of its properties and is operating and managing its businesses as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No creditors' committee has been appointed in this Case.

4.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. § 1408.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief sought herein are section 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 9014.

6.      The Debtor, in the exercise of its reasonable business judgment, has determined that the most effective way to preserve the value of the Assets for the benefit of its creditors is to conduct a sale pursuant to section 363 of the Bankruptcy Code and the Plan in the amount of 3.4 million in accordance with the contracts. A foreclosure is pending by Florida Community Bank, successor to Great Florida Bank. The sale will result in the payment of all creditors in this case, and a surplus for equity.

### The Termination of the First Contract and Effectiveness of Second Contract

7.      The contract with Dobo Investment Group was set to "go hard" September 29, 2014 but the following email was received that day around 6pm:

> **From:** jamie@thetarichlawfirm.com [mailto:jamie@thetarichlawfirm.com] **Sent:** Monday, September 29, 2014 6:25 PM **To:** Kenny Baxter

> (Kenny@KrauseBaxter.com); Mitchell Nowack (mitchell@nowackolson.com) **Subject:** RE: 1221 SW 8th Street
>
> Mitch: please see below – no need for you to appear at the BR hearing tomorrow.
>
> Kenny: sorry it didn't work out. Was a pleasure working with you…better luck next time.
>
> Very truly yours, Jamie Tarich, Esq. The Tarich Law Firm P.A. t. 305.503.5095 f. 866.858.1226
>
> **From:** Yoni Bornstein [mailto:ybinternational@gmail.com]  **Sent:** Monday, September 29, 2014 6:09 PM **To:** Adrian Green **Cc:** Mark Hollander; Franco Fiorio **Subject:** 1221 SW 8th Street
>
> Cancel the contract.  Unfortunately I could not confirm with my money source.  I do not want to delay this.  I'm sorry we can not proceed.    --
> Regards, Yoni Bornstein
>
> 305-432-0097  Miami Cell

On the next morning September 30, 2014 debtor's real estate counsel sent the following email;

> **From:** Kenny Baxter [mailto:Kenny@KrauseBaxter.com]  **Sent:** Tuesday, September 30, 2014 9:57 AM **To:** 'jamie@thetarichlawfirm.com' **Cc:** david@krausebaxter.com **Subject:** RE: 1221 SW 8th Street
>
> Jamie:
>
> It certainly is unfortunate that your client elected to cancel the contract.
>
> You are advised that the seller makes claim as to the $100,000 deposit and that it considers that money forfeited to the seller under the terms of the Contract.  Please arrange to immediately disburse the funds to our office.
>
>> Jamie:
>
> The buyer did not properly terminate the Contract nor is there any basis upon which buyer will be entitled to the return of the deposit.  By way of example, I would call your attention to the following:
>
>> 1.     Contract did not provide for the buyer to have the right to cancel the Contract for any reason whatsoever.
>> 2.     Contract was not contingent on financing.
>> 3.     Contract was cancelled because of financing.
>> 4.     Buyer demonstrated bad faith by entering into a contract not contingent on financing, repeatedly assuring seller there was no financing, and that it had the funds to close. Buyer induced seller to sign the contract on that basis while at all times that was untrue as evidenced by the cancellation that you provided to me.
>> 5.     Never followed required notice as required under the due diligence clause.
>> 6.     No objection raised as to the suitability of the Property.
>> 7.     No notice that Property not acceptable.

3

> Once again we demand the immediate release of the deposit to us and instruct you that under no circumstances may you return the deposit to the buyer which would be a violation of the Contract which is under the supervision of the Bankruptcy Court.
>
> **Kenneth D. Baxter** Krause & Baxter 3195 Ponce de Leon Blvd. Suite 200 Coral Gables, Florida 33134 Telephone (305) 448-0021 Facsimile (305) 448-

On September 30 at 9:27 AM notice was given to the backup buyer of the termination of the prior contract, triggering the effective date of the second contract:

> **From:** David Krause [mailto:David@KrauseBaxter.com]  **Sent:** Tuesday, September 30, 2014 9:27 AM **To:** Adam D. Lustig **Cc:** adrian@shorelineaerospace.com; y@blueroostercapital.com; 'Kenny Baxter'; JOEL ARESTY **Subject:** Marcos Lapciuc purchase from 8th Street llc. back up contract
>
> Dear Mr. Lustig:
>
> At 6:09 PM yesterday, my client received an e-mail from Yoni Bornstein, the principal of the Purchaser on the active contract of sale and purchase of the property. It stated, in part, "Cancel the contract. Unfortunately I could not confirm with my money source. I do not want to delay this. I'm sorry we cannot proceed". It was also forwarded to our office by Mr Bornstein's attorney Jaime Tarich who added "Kenny. Sorry it didn't work out. Was a pleasure dealing with you. Better luck next time."
>
> Pursuant to Paragraph W of the Comprehensive Rider, we are notifying you of the cancelling by Buyer #1. Our client spoke to your client last evening to so advise him. It is our understanding that your client will be attending the court hearing this afternoon.
>
> We consider today, September 30th, to now be the Effective Date of your back up contract which is now in first position.

Dobo Investment Group LLC has made it clear at the hearing 9/30 and thereafter to undersigned that they now want to buy the property, and want an opportunity to participate at a sale.

Both of the contracts, to either Dobo Investment Group LLC or assigns or Marcos Lapciuc and/or assigns and the employment of brokers thereunder, were subject to approval of the bankruptcy court, which had not yet approved either of the contracts or the employment of the real estate brokers involved.

The court therefore has jurisdiction and discretion to fashion a sale procedure fair to all parties and in the best interest of Debtor and its creditors and estate.

4

## NATURE OF EMERGENCY RELIEF AND HEARING REQUESTED

8. By this Motion, the Debtor seeks the entry of an order of this Court setting a hearing to consider (a) approving the Plan and Sale of the Assets; (b) approving the form and manner of notice; (c) authorizing the Sale free and clear of liens, claims, encumbrances, and interests, (d) scheduling the closing; and (e) granting related relief such as disposition of $100,000 deposit or ability to bid of first buyer and approving or disapproving brokerage contracts and the amount of commission to be paid.

This motion is filed as an emergency because at the hearing September 30, 2014 it became clear that a dispute existed as to who was going to purchase the property between two potential buyers, and that time was of the essence under the real estate contract, and that therefore the preliminary hearing should be expedited, ans=d time shortened to set a final hearing for confirmation of the Plan as well as the sale.

## PROPOSED SALE PROCEDURES

9. The Debtor believes that it is imperative that it promptly moves forward because of the interest of two buyers. Accordingly, this motion and Plan are consistent with the Debtor's intent to expedite the sale process, and with the business judgment that the offers are reasonable and that the highest or best offer for the Assets should be achieved.

10. The Debtor, expressly reserves the right to modify the relief requested herein, and reserves the right, to: (a) waive terms and conditions set forth herein with respect to any or all potential bidders, (b) impose additional terms and conditions with respect to any or all potential bidders, (c) extend the deadlines set forth herein, (d) cancel the sale of the Assets and/or Sale Hearing in open court without further notice; (e) amend the Sale Procedures as they may

determine to be in the best interests of their estates or (f) withdraw the Motion at any time with or without prejudice.

A.     *Notice of Sale*

11.     The Debtor seeks to have the Sale hearing scheduled the same date as the Plan confirmation hearing.  The closing will take place only after the Order Confirming Plan and Sale is entered by the court.

B.     **Bidding Procedures**

Since First buyer undisputedly terminated its contract causing Debtor to make the second buyer effective, and since the second contract is clearly subject to bankruptcy court approval, Debtor believes that the court should determine whether to sell to the second buyer under its contract, or permit the first buyer to continue to participate, and conduct the sale as an auction, perhaps with each buyer having to pay its real estate commission itself at closing, in order to create a level playing field, and the second buyer opening bidding at $3,400,000 paying its own brokers, and with bidding increments of $20,000.

Debtor would request that the court order that first buyer who has completed due diligence share that information with other buyer and be reimbursed by second buyer for the same if the second buyer is the successful bidder.

First Buyer has incurred the following expenses regarding due diligence:

| Company Name | Description | Amount |
|---|---|---|
| Dynatech | Environmental | 1,200.00 |
| Survey | Nova Surveyors | 1,875.00 |
| Seico Construction | Inspection | 650.00 |

6

12. Debtor shall serve this motion and notice of hearing to: all entities known to have expressed a *bona fide* interest in acquiring the Assets (by e mail); the Office of the United States Trustee for the Southern District of Florida; known entities holding or asserting a security interest in or lien against any of the Assets; taxing authorities whose rights may be affected by a sale of the Assets; The Florida Department of Revenue, and all government agencies required to receive notice of proceedings under the Bankruptcy Rules; the Debtor's unsecured creditors; and all parties that have requested notice pursuant to Bankruptcy Rule 2002.

13. The Debtor further requests, pursuant to Bankruptcy Rule 9014, that objections, if any, to the proposed Sale: (a) be in writing; (b) comply with the Bankruptcy Rules; (c) be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Florida; and (d) be served so as to be received by: (i) the Debtor; (ii) counsel to the Debtor (iii) the Office of the United States Trustee; and all parties entitled to notice pursuant to Bankruptcy Rule 2002, prior to the hearing date on this motion.

## BASIS FOR RELIEF REQUESTED

### A. *The Sale is Within the Sound Business Judgment of the Debtor and Should Be Approved*

14. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors. *In re Parkstone Med. Info. Sys.*, 2001 WL 36189822 at *1 (Bankr. S.D. Fla. Oct. 16, 2001) (Hyman, J.); *In re Ionosphere Clubs, Inc.*, 184 B.R. 648, 653 (S.D.N.Y. 1995) ("courts consistently have acknowledged that assets of an estate can be sold prior to the confirmation, or even filing, of a plan").; *In re Lorraine Brooke*

*Associates, Inc.*, 2007 WL 2257608 at *4 (Bankr. S.D. Fla. Aug. 2, 2007) (Cristol, J.) (applying business judgment test in assessing 363(b) motion in chapter 7 proceedings) (citing *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 175-176 (D. Del. 1991)); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

15. The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely: (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business; (b) that adequate and reasonable notice has been provided to interested persons; (c) that the debtors have obtained a fair and reasonable price; and (d) good faith. *See, In re Fountain Imaging of N. Miami Beach, LLC,* No. 06-12686, Docket Nos. 215-217 (Bankr. S.D. Fla. Dec. 14, 2006); *Abbotts Dairies,* 788 F.2d 143; *Titusville Country Club v. Pennbank (In re Titusville Country Club),* 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd,* 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). In this case, the Debtor submits that the decision to proceed with the Sale and the Bid Procedures related thereto are based upon its sound business judgment and should be approved. A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.,* 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *Lionel,* 722 F.2d at 1071; *Montgomery Ward,* 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

16. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.,* 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus),* 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian),* 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.,* 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

17. The Debtor submits that sound business justification exists to sell the Assets. Absent a sale of the Assets, the Debtor lacks sufficient cash resources to continue to operate the business and pay their debts as they are due. Thus, the relief sought herein is not only reasonable, but necessary, to maximize the value of the Debtor's estates for the benefit of their stakeholders.

18. This motion is designed to provide adequate notice to all potentially interested parties, including those who have previously expressed an interest in purchasing the Assets. The Debtor has retained a property broker to assist in the marketing of the Assets, solicit interested

competing bidders, disseminate due diligence information and assist in the auction process. Accordingly, the proposed Sale satisfies the second prong of the *Abbotts Dairies* standard.

19. Moreover, the Sale is designed to maximize the value received for the Assets. The process proposed by the Debtor allows for a timely and efficient auction process given the circumstances facing the Debtor, while providing buyer with ample time and information to submit a timely bid and perform diligence. The process is designed to ensure that the Assets will be sold for the highest or otherwise best possible purchase price. Accordingly, the Debtor and all parties in interest can be assured that the consideration received for the Assets will be fair and reasonable, and, thereby satisfying the third prong of the *Abbotts Dairies* standard. As discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also satisfied.

**B.     *The Sale is Proposed in "Good Faith" under Section 363(m) of the Bankruptcy Code***

20. The Debtor requests that the Court find that any Successful Bidder (including, without limitation the buyers under the first and second contracts) is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale.

21. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

22. Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal. By its terms, section 363(m) of the Bankruptcy Code applies to sales of interests in tangible assets, such as the Assets.

23. The Debtor submits, and will present evidence at the Sale Hearing, if necessary, that as set forth above, the Sale was an arm's-length transaction, in which the Successful Bidder acted in good faith. Accordingly, the Debtor requests that the Court make the finding at the Sale Hearing that the Successful Bidder has purchased the Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code.

C.   *The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code*

24. Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).

25. The Debtor expects that they will satisfy, at minimum, the second and fifth of the requirements of section 363(f) of the Bankruptcy Code, if not others as well, approving the sale of the Assets free and clear of all adverse interests is warranted. Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f). *See, e.g., In re Trans World Airlines, Inc.,* 2001 WL 1820325 at *3, 6 (Bankr. D. Del. March 27, 2001); *Volvo White Truck Corp. v. Chambersburg*

11

*Beverage, Inc. (In re White Motor Credit Corp.),* 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987). As a result, the Assets may be sold free and clear of liens.

### E.     Relief from the Fourteen Day Waiting Periods Under Bankruptcy Rules 6004(h) is Appropriate

26.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtor requests that the Sale Order be effective immediately by providing that the fourteen (14) day stay under Bankruptcy Rules 6004(h) is waived.

27.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rules 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, Collier on Bankruptcy suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶6064.09 (L. King, 15th rev. ed. 1988). Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

28.    As described above, time is clearly of the essence. Since the closing of the Sale promptly is of critical importance, the Debtor hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h).Relief from the Fourteen Day Waiting Periods Under Bankruptcy Rules 6004(h) is Appropriate.

### F.     Employment of Real Estate Brokers

Debtor disputes the amount of commission sought, and seeks payment of brokers by the respective buyers rather than by Debtor.

WHEREFORE, the Debtor respectfully requests (i) an order: (a) approving Sale of the Assets; (b) approving the form and manner of Sale; (c) authorizing the Sale free and clear of liens, claims, encumbrances, and interests, (d) scheduling the Sale Hearing and approving objection deadlines prior to the hearing; and (e) employing the real estate brokers in the contract, shortening time, granting related relief; and (ii) such other and further relief as the Court deems just and proper.

JOEL M. ARESTY, P.A.
Counsel for Debtor
**309 1st Ave S**
**Tierra Verde FL 33715**
**Phone: 305-904-1903**
**Fax: 305-723-7893**
E-mail: Aresty@Mac.com
By:/s/ Joel M. Aresty, Esq
**Fla. Bar No. 197483**